Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3768 | **DATE** | 9/22/2003 |
| **CASE TITLE** | Wajad Ali vs. Jo Anne Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in the attached Memorandum Opinion and Order, the Commissioner's motion for summary judgment [13-1] is denied, and Ali's motion to reverse and remand [12-1] is granted in part and denied in part. The case is remanded to the Commissioner for further proceedings consistent with this Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 23 2003 | 16 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| hmb | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WAJAD ALI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 01 C 3768 |
| ) | |
| JO ANNE B. BARNHART,[1] Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

NAN R. NOLAN, Magistrate Judge:

Plaintiff Wajad Ali seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§416, 423. This matter is before the Court on the Commissioner's motion for summary judgment and Ali's motion to reverse and remand. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons set forth below, the Commissioner's motion is denied, Ali's motion is granted in part and denied in part, and the case is remanded for further proceedings consistent with this opinion.

---

[1] On November 9, 2001, Jo Anne B. Barnhart became the Commissioner of Social Security. Ms. Barnhart is automatically substituted as the defendant in this action. Fed. R. Civ. P. 25(d)(1); 42 U.S.C. §405(g).



## PROCEDURAL HISTORY

Ali claims that he became disabled on March 27, 1987 due to diabetes, asthma, arm, leg, and back pain, eye problems, fatigue, and heart attacks, including bypass surgery in 1997. (R. 93, 104, 125, 132; Pl. Mem., p. 4). On July 13, 1998, he applied for DIB, but his application was denied initially and again on reconsideration. (R. 62-63, 70-77). The Commissioner found that though Ali suffered from severe impairments at the time of his application, there was no evidence that he had a disability before his eligibility for DIB expired on December 31, 1988. (R. 75). Ali appealed the Commissioner's decision and requested an administrative hearing, which was held on May 5, 1999. (R. 27, 30). On September 22, 1999, the Administrative Law Judge ("ALJ") denied Ali's claim for DIB. The ALJ found that Ali was not disabled prior to December 31, 1988, the date his insured status expired, because he did not have any severe impairments that significantly limited his ability to perform basic work-related activities. (R. 25). On July 5, 2000, the Appeals Council denied Ali's request for review (R. 11-12), and the ALJ's decision therefore became the final decision of the Commissioner. *See* 20 C.F.R. §§416.1481.

## FACTUAL BACKGROUND

Ali, born on December 12, 1940, was 48 years old when his insured status for DIB expired in December 1988. (R. 24). He has a high school education and has past relevant work experience as a master inspector of small machinery parts. (R. 38, 108, 119-123, 204).

### A. Medical Evidence

Ali was injured in an automobile accident in July 1981 and was hospitalized several times for related complications between 1981 and 1983. (R. 229, 236). His treating physician, Dr.

Noemi N. Borrillo, stated in a June 26, 1982 medical report that Ali had organic brain syndrome, secondary to a head concussion; low back syndrome; anxiety neurosis, secondary to the car accident; whiplash; a sprained ankle; left anterior heart block; and severe chest pains with pre-infarction angina, which required re-hospitalization on January 18, 1982. Dr. Borrillo indicated various treatments including intensive physical therapy, psychotherapy, pain medication, muscle relaxants and tranquilizers. (R. 235-36).

Beginning on September 12, 1983, Ali was treated by Dr. Sikander Shikoh Khan in Pakistan. At that time, he suffered from giddiness, leg and arm numbness, low back pain, hypertension, and ischemic heart disease, all related to the 1981 car accident. (R. 229). On November 25, 1983, Dr. Khan indicated that Ali was still under his care for the same symptoms and could not travel abroad. (R. 231). Shortly thereafter on November 30, 1983, Ali was hospitalized for six days due to recurrent attacks of pain and discomfort in his chest. (R. 232). In reports dated April 16 and June 6, 1984, Dr. Khan opined that Ali had been "completely disabled" since September 12, 1983. (R. 229-30, 234).

In July and August 1984, Ali had three one-hour psychotherapy sessions with Dr. Arturo O. Fogata back in the United States. (R. 245). Ali did not see Dr. Borrillo between July 14, 1983 and June 19, 1984, and over the next three years, he had just four appointments with the doctor on June 19, July 5 and July 16, 1984, and May 20, 1985. (R. 243). In an August 10, 1985 letter, Dr. Borrillo stated that as a result of the car accident, Ali was completely disabled from July 31, 1981 until June 1, 1985. According to Dr. Borrillo, Ali was suffering from cerebral concussion, whiplash, low back injury, unstable angina, hypertension, and post traumatic neurosis, secondary to the car accident during that time. (R. 237). After his May 1985

appointment, Ali did not see Dr. Borrillo again until December 30, 1986, followed by one more office visit on January 24, 1987. (R. 244). He also had a one-hour psychotherapy session with Dr. Fogata on January 12, 1987. (R. 238).

After January 24, 1987, there is no record that Ali received any further medical treatment until March 1997 when he underwent tests and treatment related to a heart condition at the Punjab Institute of Cardiology in Pakistan. (R. 147-203). A March 28, 1997 treatment note indicated that Ali's condition was "satisfactory." (R. 154).

On August 31, 1998, Ali had a consultative examination with Dr. May Hashimi. At that time, Ali reported that he had worked as a mechanical inspector in Northbrook "for several years, until 1997." He complained of chest pains and shortness of breath, and stated that he had myocardial infarctions in 1991, 1992, and 1995, and coronary bypass surgery for coronary artery disease in March 1997 in Pakistan. (R. 204). Dr. Hashimi's physical examination revealed that Ali's range of motion in his back was limited by pain and he showed reduced range of motion (3/5) in his right arm and leg. However, he had normal ranges of motion in his joints, normal muscle strength (5/5) in his left arm and leg, and normal reflexes and sensation. In addition, he was alert and oriented and his cognitive and memory functions were intact.

Dr. Hashimi noted that Ali had non-insulin dependent diabetes for many years, with cardiovascular and cerebrovascular complications. He also had coronary artery disease, which was treated with a coronary artery bypass graft in March 1997, a CVA (cerebrovascular accident or stroke), hypertension, chronic obstructive pulmonary disease ("COPD"), low back pain, and episodes of vertigo with nausea and vomiting, possibly symptoms of Meniere's disease. (R. 205-

06). Dr. Hashimi concluded that Ali could "sit, stand, walk without a cane with right extremity weakness, lift, carry, handle objects, hear, speak and travel." (R. 206).

On September 9, 1998, state agency physicians reviewed Ali's medical records and found that he experienced wheezing consistent with angina, as well as back pain and a stroke. (R. 208-09). They concluded that Ali could lift ten pounds frequently and 20 pounds occasionally, and stand or walk for at least two hours and sit for at least six hours in an eight-hour work day. (R. 207-14). On December 3, 1998, Ali saw Dr. Peter Biale for a consultative examination. Ali reported that he worked as a master inspector until 1983 and had diabetes, hypertension, chest pain, back pain, dizziness, and shortness of breath. Ali stated that he had been taking medication for hypertension for one year and despite medical records to the contrary, denied having a stroke two years earlier. Ali also disclosed his 1997 coronary bypass and complained of difficulties with sitting, standing, and lifting. (R. 215).

Dr. Biale indicated that Ali had diabetes for over 20 years but no clear history of retinopathy, neuropathy, or nephropathy. He noted Ali's four myocardial infarctions and stroke but found that his current blood pressure readings were normal and that he had only been on hypertension medication for one year. In addition, Dr. Biale indicated that Ali reported bouts of dizziness and had limited spinal motion, congestive heart failure with a history of COPD, shortness of breath, and right-sided weakness from the stroke suffered two years earlier. (R. 218).

B.  **Plaintiff's Testimony**

At the hearing before the ALJ, Ali testified that as a result of the 1981 car accident, he was hospitalized several times and experienced back pain, memory problems and difficulty

getting along with his wife. (R. 37-38). He was off work for two years following the accident but returned to his position as a master inspector in June 1983. Ali stated that he had difficulty performing his job due to memory, vision, and back problems, and he was unable to walk more than 10 minutes without pain. Three or four months after returning to work, Ali was asked to resign his position because he could not perform his job. (R. 39-41, 53-54). He went to Pakistan for five or six months, then returned to the United States for several years. In 1987, he went back to Pakistan because the treatment he was receiving in the United States was not helping him. At that time, he was unable to walk or lift anything, and he had back, hip and shoulder pain. (R. 43-48, 56). While in Pakistan, Ali received massages and herb treatments and took medication for headaches, diabetes and pain. As a result of this treatment, he felt "1,000 percent better" at the hearing than he did in 1983. (R. 43, 46). Ali remained in Pakistan for 11 years until July 1998, at which time he returned to the United States. (R. 48).

Ali testified that he did not work in Pakistan both because there was no work available in that country, and because he was not able to work. (R. 42). He experienced chest pain beginning in 1982 and complained of shortness of breath and fatigue. (R. 49-50). In addition, he stated that he had heart attacks in 1989 and 1991, as well as cataract surgery in Pakistan in 1990. Ali also claimed to have had bypass surgery in Pakistan in 1993. (R. 50). Ali stated that he applied for supplemental security income (SSI) in 1998 and was granted benefits. (R. 52).

C. The ALJ's Findings

Ali's eligibility for benefits expired on December 31, 1988. The ALJ found that prior to that date, Ali suffered from several impairments related to the 1981 car accident, including organic brain syndrome, secondary to a head concussion; low back syndrome; an anxiety

6

neurosis, secondary to a car accident; whiplash injury; sprain to the left ankle; contusion to the left back; and left anterior heart block. (R. 23, 25). He pointed out that Ali's additional complaints of bypass surgery in 1997, a heart attack in 1989, and cataract surgery in 1990 all occurred after his insured status expired. The ALJ also found it significant that on July 28, 1983, Ali received DIB for the closed period of July 3, 1981 through June 20, 1983, and that he did not appeal the ALJ's finding of no disability past that date. (R. 23, 33, 34-35, 58-59, 64-68).

In considering Ali's medical records, the ALJ noted that as of November 1983, his treating physicians in Pakistan expected him to recover in a "couple of months" and found his condition much improved. (R. 24). The ALJ acknowledged Dr. Borrillo's August 1985 letter indicating that Ali was disabled from September 1983 to June 1985, but did not find it persuasive because it was unsupported by any objective medical evidence. (*Id.*) For similar reasons, the ALJ did not credit Ali's testimony regarding the extent of his impairments and their effect on his ability to work. The ALJ concluded that Ali was not disabled between March 27, 1987 – the onset date alleged by Ali – and December 31, 1988 because he did not have any severe impairments that significantly limited his ability to perform basic work-related activities. (R. 25).

## DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's final decision is governed by §205(g) of the Social Security Act. *See* 42 U.S.C. §405(g). The ALJ's findings are generally entitled to great deference because the ALJ, not the court, is responsible for weighing conflicting evidence and for making a final determination of whether the claimant is disabled. *See Clifford v. Apfel*, 227

F.3d 863, 869 (7th Cir. 2000) (court may not "reweigh the evidence, or substitute [its] own judgment for that of the Commissioner"). The Court may reverse the ALJ's decision "only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision." *Betancourt v. Apfel*, 23 F. Supp. 2d 875, 880 (N.D. Ill. 1998) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)).

At the same time, the court cannot act as an uncritical "rubber stamp" for the Commissioner's decision and should only affirm findings of fact when they are supported by substantial evidence. *Howell v. Sullivan*, 950 F.2d 343, 347 (7th Cir. 1991); *Hereford v. Shalala*, 48 F.3d 1221 (7th Cir. 1995). Substantial evidence includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In social security disability hearings, "[i]t is a basic obligation of the ALJ to develop a full and fair record." *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991) (quoting *Smith v. Secretary of Health, Education and Welfare*, 587 F.2d 857, 860 (7th Cir. 1978)). Failure to fulfill this duty constitutes good cause to remand for gathering of additional evidence. *Cannon v. Harris*, 651 F.2d 513, 519 (7th Cir. 1981).

**B.     Five-Step Inquiry**

To recover DIB under Title II of the Social Security Act, a claimant must establish that he is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp. 2d 973, 977 (N.D. Ill. 2001). A person is disabled if he is unable to perform "any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. §416.905. In determining whether a claimant suffers from a

disability, the ALJ conducts a standard five-step inquiry: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. §§404.1520, 416.920; *Clifford*, 227 F.3d at 868. In addition, the claimant must show that he had disability insured status at the time he became disabled. 20 C.F.R. §404.131; *West v. Apfel*, No. 99 C 6235, 2000 WL 1847766, at *1 (N.D. Ill. Dec. 14, 2000).

## C.     Analysis

Ali argues that the ALJ erred in two respects: (1) he failed to consider the relevant medical evidence and build a logical bridge between that evidence and his conclusion; and (2) he failed to determine an onset date of disability in accordance with Social Security Regulation ("SSR") 83-20. The Court addresses each in turn.

### 1.     The ALJ's Analysis of the Evidence

Ali argues that the ALJ failed to analyze the relevant medical evidence or explain how it supported his conclusion that Ali was not disabled. In making his determination, the ALJ noted that as of November 1983, Ali's doctor in Pakistan felt that he could travel abroad "when fully recovered," and that shortly thereafter Ali did travel abroad to the United States (though the ALJ mistakenly said that he traveled to Pakistan). (R. 24, 41-42, 44, 249). The ALJ also relied heavily on the fact that Ali's physicians "expected" him to recover in "approximately two months" and thought he "had a much improved condition when he went to Pakistan." (R. 24). However, Dr. Khan's November 1983 note stated only that he "hoped" Ali would recover in a couple of months. And the ALJ did not provide any record citation for the statement that the

9

doctors in Pakistan thought Ali's condition had "much improved," nor was this Court able to find one. (R. 229-30, 250).

Ali next objects that the ALJ erred in relying on his testimony that he felt "1,000 percent better" after going to Pakistan. Pl. Mem., p. 8. The ALJ certainly acted properly in considering Ali's own testimony regarding his condition. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) ("the ALJ cannot merely ignore the claimant's allegations"). However, it is clear from that testimony that Ali felt 1,000 percent better at the time of the hearing, which arguably does not shed much light on his condition before December 31, 1988. (R. 43, 46, 56). In that regard, Ali testified that he was in "very bad shape" when he went to Pakistan the second time in March 1987, that he was not able to walk or lift anything, and that he had back, hip and shoulder pain. (R. 43-48, 56). The ALJ did not address any of this testimony but concluded generally that "[t]he medical record establishe[d]" that Ali was not credible. (R. 25). However, "it is not sufficient for the adjudicator to make a single, conclusory statement that . . . 'the allegations are (or are not) credible.'" *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Given that the ALJ mischaracterized some of the medical evidence, his failure to at least mention Ali's statements and provide some explanation for rejecting them was improper.

Ali next argues that in a letter dated August 10, 1985, his treating physician, Dr. Borrillo, stated that he was disabled from September 1983 until June 1, 1985. According to Dr. Borrillo, Ali was suffering from cerebral concussion, whiplash, low back injury, unstable angina, hypertension, and post-traumatic neurosis, secondary to the car accident. (R. 237). The ALJ found that there was no objective medical evidence to support Dr. Borrillo's conclusions but, again, he did not explain this finding. To be sure, the record indicates that at the time Dr.

10

Borrillo wrote his letter, he had not seen Ali at all between July 14, 1983 and June 19, 1984. He saw Ali on June 19, July 5 and July 16, 1984 but then did not see him again for almost a year until May 20, 1985. There are no medical records relating to these visits, much less any which support Dr. Borrillo's diagnoses or establish that Ali was unable to work during the stated time period. (R. 237, 243). *See also Clifford*, 227 F.3d at 870 (a claimant "is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled'"). And despite Ali's alleged period of disability, Dr. Borrillo only saw him two more times after writing the August 1985 letter – on December 30, 1986 and January 24, 1987 – and he never stated that Ali's disability continued past June 1, 1985. (R. 244).

Nevertheless, given the ALJ's reliance on an undocumented opinion that Ali had "much improved," his failure to address Ali's testimony regarding his symptoms and ability to work, and his improper characterization of Dr. Khan's opinion as an "expectation" rather than a "hope" for improvement, his additional failure to explain the bases for rejecting Dr. Borrillo's opinion was improper and does not provide a logical bridge between the evidence and his conclusion. *See Blakes v. Barnhart*, (7th Cir. 2003) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)) ("we cannot uphold a decision by an administrative agency . . . if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result").

Ali next claims that the ALJ erred in failing to discuss his 1998 consultative examinations, his self-described symptoms and medications as of 1998, and the medical evidence regarding his 1997 cardiology tests. Pl. Mem., p. 9 (citing R. 125-27, 133-34, 141, 152, 168, 171). In his decision, the ALJ discussed Ali's 1981 car accident and his resulting impairments,

including organic brain syndrome, secondary to a head concussion; low back syndrome; anxiety neurosis, secondary to the car accident; whiplash; left ankle sprain; back contusion; and left anterior heart block. (R. 23). The ALJ also acknowledged that Ali had a heart attack in 1989, cataract surgery in 1990, and bypass surgery in 1997. Beyond that, the ALJ merely noted the existence of medical evidence regarding Ali's condition from 1998 onward. (R. 23, 24).

The ALJ found that Ali's medical condition in 1989, 1990 and 1997 was not relevant to his condition before his insured status expired on December 31, 1988. However, "[t]here can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period." *Nelson v. Callahan*, No. 96 C 7425, 1997 WL 403516, at *6 (N.D. Ill. July 16, 1997) (quoting *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984)). The Court agrees that there does not appear to be much in the record suggesting that Ali's post-December 31, 1988 conditions rendered him disabled before that date. Indeed, Ali produced no records reflecting that he received any medical treatment during the ten-year period between January 24, 1987 and March 1997. *See Johnson v. Sullivan*, 915 F.2d 1575 (7th Cir. 1990) ("claimant bears the burden of producing objective medical evidence that demonstrates an impairment during the period that disability is alleged"). However, it is clear that Ali did receive treatment because his records were before Dr. Biale when he performed his consultative examination. In addition, there is evidence in the record that Ali suffered from the same symptoms in 1998 that he complained about ten years earlier. (R. 204-06, 215-19); Pl. Mem., p. 9. The ALJ failed to explain his reasoning in rejecting outright all post-1988 records and, thus, the Court is unable to determine whether he considered all of the relevant evidence in reaching his conclusion.

It may well be that on remand, the ALJ will reach the same conclusion regarding Ali's disabled status prior to December 31, 1988. At this point, however, the ALJ has not "sufficiently articulate[d] his assessment of the evidence to 'assure us that [he] considered the important evidence . . . [and to enable] us to trace the path of [his] reasoning.'" *Garza v. Shalala*, 51 F.3d 275 (7th Cir. 1995) (quoting *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993)). Thus, the ALJ's finding that Ali was not disabled before his eligibility for benefits expired was not supported by substantial evidence in the record and must be remanded for further analysis. *Crenshaw v. Barnhart*, No. 02 C 3543, 2003 WL 360102, at *9 (N.D. Ill. Feb. 18, 2003) ("a remand is necessary to see whether or not a full analysis and articulation in the respect that this opinion has found wanting will produce the same conclusion that the ALJ reached").

### 2. SSR 83-20

Ali next argues that the ALJ committed reversible error by failing to ascertain an onset date of his disability in accordance with SSR 83-20. The "date of onset" is the date when "the impairment was sufficiently severe to prevent the individual from engaging in [substantial gainful activity]" for at least 12 consecutive months. SSR 83-20. The ALJ will need to determine a date of onset only if on remand, he finds that Ali was disabled before his insured status expired. *Compare Borton v. Apfel*, 142 F.3d 439 (7th Cir. 1998) ("[a]s the ALJ found that [claimant's] mental impairments had not reached the necessary severity as of . . . the date on which he was last insured for disability, there was no 'date of onset' to be determined").

### CONCLUSION

For the reasons stated above, the Commissioner's Motion for Summary Judgment (Docket Entry #13-1) is denied, Ali's Motion to Reverse and Remand (Docket Entry #12-1) is

13

granted in part and denied in part, and the case is remanded for further proceedings consistent with this opinion.

*[signature]*
NAN R. NOLAN
United States Magistrate Judge

Dated: September 22, 2003